UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RSDC HOLDINGS, LLC                                    CIVIL ACTION

VERSUS                                                NO. 16-3573

M.G. MAYER YACHT SERVICES,                            SECTION M (5)
INC., ET AL.

## ORDER & REASONS

Before the Court are cross-motions for summary judgment filed by the plaintiff and defendant-in-counterclaim, RSDC Holdings, LLC ("RSDC"), and third-party defendant, Donald Joe Calloway ("Calloway");[1] and the defendant, M.G. Mayer Yacht Services, Inc. ("Mayer").[2] Having considered the parties' memoranda and the applicable law, the Court issues this Order & Reasons.

**I.   BACKGROUND**

This maritime action arises out of two liens on the *Tuna Taxi*, a 48-foot ocean sport fishing vessel, filed by Mayer for allegedly unpaid repairs.[3] On or about October 29, 2012, Calloway paid $65,000 to First NBC Bank to acquire the *Tuna Taxi* as part of an extra-judicial foreclosure.[4] Mayer contends that, as of October of 2012, Calloway believed himself to be owner of the vessel, having testified as much.[5] RSDC and Calloway dispute this, claiming that the act of transfer, endorsement, assignment, and subrogation of note between Calloway and First NBC Bank dated

---

[1] *See* RSDC and Calloway's motion for summary judgment, R.Doc. 78, which M.G. Mayer Yacht Services, Inc. opposes, R. Doc. 87, and in support of which RSDC and Calloway reply. R. Doc. 99.
[2] *See* Mayer's motion for summary judgment, R. Doc. 83, which RSDC and Calloway oppose, R. Doc. 88, and in support of which Mayer replies. R. Doc. 102.
[3] R. Docs. 1-1 & 1-2.
[4] *See* R. Docs. 1 at 2; 83-19 at 1; 88-1 at 1.
[5] R. Doc. 87 at 3 (citing R. Docs. 83-7 & 83-8).

1

August 14, 2014, mark the first moment of Calloway's ownership.[6] Regardless, both parties agree that, after submitting payment to First NBC Bank in October of 2012, Calloway and Richard Sanderson, Calloway's business associate, traveled to California to obtain the vessel.[7] In order for the vessel to be transported to New Orleans, its bridge had to be removed from the main body of the vessel.[8] Thus, upon arriving in New Orleans, Calloway and Sanderson sought to have the bridge reattached.

While Calloway testified that he never intended Sanderson to have Mayer perform any repair work because of Mayer's purported unreliable reputation in the business community,[9] Calloway also admits that he submitted payment for the bridge repair and intended Sanderson to communicate with Mayer about completing the bridge repair.[10] The parties agree that Sanderson directed Mayer to complete repairs of the vessel pursuant to a work order dated November 16, 2012, which provided that unpaid invoices within thirty days of receipt would be charged interest at eighteen percent per annum, and that the buyer would owe costs incurred to collect them, including attorney's fees.[11] The parties dispute the extent of repairs that Sanderson requested and that Mayer ultimately performed.[12] While Sanderson and Calloway contend that the only repair either authorized or performed was that of the bridge reassembly, Mayer claims that Sanderson authorized and performed much more work, up until July of 2013.[13] Of the twenty-two invoices

---

[6] R. Doc. 88-1 at 1 (citing R. Doc. 83-8 at 148).
[7] *See* R. Docs. 83-19 at 1; 88-1 at 1. Whether Calloway and Sanderson were acting on behalf of RSDC in October of 2012 is a contested issue of fact. The parties also dispute at which point Calloway became a member of RSDC. *See* R. Doc. 83-3 at 7. It is undisputed, though, that Sanderson formed RSDC on or about October 30, 2012. Sanderson assigned his interest in RSDC to Calloway in December 18, 2015, but Calloway was listed as an original member of RSDC. *See id.* Later, upon discovering that Calloway owned the boat in his personal capacity, Mayer filed its third-party demand adding Calloway to the suit. *See* R. Doc. 51.
[8] *See* R. Docs. 83-19 at 1-2; 88-1 at 1.
[9] R. Docs. 88-1 at 1-2; 88-3 at 1.
[10] R. Doc. 88-4 at 13.
[11] *See* R. Docs. 83-19 at 2 (citing R. Doc. 10-1); 88 at 3.
[12] R. Doc. 88-1 at 2 (citing R. Docs. 88-3 & 88-4 at 13).
[13] R. Docs. 83-19 at 3; 88-1 at 2.

issued between December 2, 2012, and July 14, 2013, Mayer received one partial payment for the first invoice from Sanderson on behalf of Calloway in the amount of $1,023.13.[14] In February of 2013, Mayer issued a fifty percent credit totaling $10,472.15 on nine invoices.[15]

All invoices were addressed to Sanderson.[16] Calloway and RSDC dispute ever receiving the invoices.[17] Mayer's owner, Michael Mayer, testified he did not believe Mayer contracted with RSDC or Calloway, but with Sanderson.[18] A Mayer employee, Rene Gros, testified by way of affidavit that he believed Sanderson was the vessel's owner at the time of Mayer's dealings with Sanderson.[19] On or about March 18, 2013, Mayer filed its first notice of lien with the U.S. Coast Guard for $31,085.75, the amount of the then-outstanding invoices.[20] Thereafter, Mayer submitted additional invoices, and, failing payment, Mayer filed a second notice of recorded lien for $4,588.40 on or about July 24, 2013.[21]

RSDC alleges that Mayer released the vessel to Calloway in July of 2013 after completing the bridge repair and warranting it free of all liens.[22] Mayer, on the other hand, claims the vessel was moored at its dock from December 2012 to July 2013, and claims to have performed work authorized by RSDC and Calloway through their agent Sanderson.[23] RSDC, the current owner of the *Tuna Taxi*, initiated this civil action seeking a declaratory judgment that the *Tuna Taxi* is not subject to any liens in favor of Mayer.[24] By way of counterclaim and third-party demand asserting claims for suit on open account under Louisiana law, breach of contract, *quantum meruit*, and

---

[14] *See* R. Doc. 83-3 at 5-6 (citing R. Doc. 83-11).
[15] *See id.* at 6 (citing R. Doc. 83-11).
[16] *See* R. Docs. 78-1; 78-3 at 2.
[17] R. Doc. 88-1 at 2.
[18] R. Doc. 78-3 at 1-2.
[19] R. Doc. 113.
[20] R. Doc. 83-12.
[21] R. Doc. 83-13.
[22] R. Doc. 1 at 2.
[23] R. Doc. 83-3 at 5, 9-10.
[24] R. Doc. 1 at 2-3.

detrimental reliance, Mayer seeks to recover the cost of the repairs (as invoiced), finance charges, collection expenses, and attorney's fees.[25]

## II. PENDING MOTIONS

In their motion for summary judgment, RSDC and Calloway argue that Mayer's contract claims have the character of an open-account claim and are prescribed because Mayer filed suit more than three years after the last invoice.[26] Regardless, RSDC and Calloway continue, Mayer's contract claims fail because Mayer lacks contractual privity with RSDC or Calloway.[27] RSDC and Calloway also contend that Mayer's alternative claims for equitable relief must be dismissed as mere "gap fillers."[28] Mayer responds that its claims are not prescribed because they sound in contract, which has a prescriptive period of ten years; that Sanderson acted as agent, with either actual or apparent authority, to bind Calloway as principal; and that Sanderson, acting on behalf of the owner, is presumed to have authority to procure necessaries under the Federal Maritime Lien Act.[29] In their reply, RSDC and Calloway argue that Sanderson lacked actual authority to order repairs beyond the bridge reassembly; that an apparent agency theory fails because Mayer never believed it contracted with the principals (whether RSDC or Calloway); and that the Federal Maritime Lien Act is inapplicable to Mayer's *in personam* claims for damages.[30] In particular, to support their request that Mayer's contract claims be dismissed, RSDC and Calloway point both to the invoices, which were solely addressed to Sanderson, and to Michael Mayer's testimony, in which he states that he did not contract directly with RSDC or Calloway.[31]

---

[25] R. Doc. 51.
[26] R. Docs. 78 at 1; 99 at 4-5.
[27] R. Doc. 78 at 1.
[28] R. Doc. 99 at 4-5.
[29] R. Doc. 87 at 6-9.
[30] R. Doc. 99 at 2-3, 5.
[31] *Id*.

4

In its cross-motion for summary judgment, Mayer seeks (1) dismissal of RSDC's suit to have the *Tuna Taxi* declared free of liens and (2) judgment in Mayer's favor on the issues of liability and damages asserted in its third-party complaint against Calloway (the same claims RSDC and Calloway seek to have dismissed by their own motion for summary judgment).[32] The parties largely repeat the arguments summarized above in connection with RSDC and Calloway's motion for summary judgment. In its reply, Mayer argues that even if Sanderson lacked actual or apparent authority, RSDC and Calloway are nonetheless bound because they ratified Sanderson's conduct.[33] Mayer also notes it has since dismissed its open-account claim, now believing the true nature of its cause of action to involve the breach of a maritime contract.[34]

## III. LAW & ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id*. A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id*. at 323. If the moving party meets

---

[32] R. Doc. 83 at 1. Mayer does not ask for summary judgment on its claims against RSDC.
[33] R. Doc. 102 at 1-6.
[34] *Id*. at 6-7.

5

that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996). The substantive law identifies which facts are material. *Id.* Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Equal Emp't Opportunity Comm'n v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014). "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, __, 134 S. Ct. 1861, 1866 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). Nor must the court consider uncited evidence in the record. Fed. R. Civ. P. 56(c)(3).

After the movant demonstrates the absence of a genuine dispute, the nonmovant must articulate specific facts and point to supporting, competent evidence that may be presented in a

form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

### B. Mayer's Motion for Summary Judgment on RSDC's Declaratory Judgment Action Concerning the *Tuna Taxi* Liens and on Mayer's Third-Party Demand Against Calloway

To establish a maritime lien for necessaries such as ship repairs, the lienholder must prove that it provided "necessaries to a vessel on the order of the owner or a person authorized by the owner." *Lake Charles Stevedores, Inc. v. Professor Vladimir Popov MV*, 199 F.3d 220, 223-24 (5th Cir. 1999); 46 U.S.C. § 31342. Among those presumed to have the authority to procure necessaries is an agent appointed by an agreed buyer in possession of the vessel. 46 U.S.C. § 31341. When there is doubt as to the agent's authority, it is resolved under general principles of agency law. *Lake Charles Stevedores, Inc.*, 199 F.3d at 226. *But see Crescent City Marine, Inc. v. M/V Nunki*, 20 F.3d 665, 668-69 (5th Cir. 1994) (applying Louisiana mandatary law and general agency law to analyze sufficiency of authority to give rise to maritime lien).

"An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." RESTATEMENT (THIRD) AGENCY § 2.01. Under Louisiana law, the mandatary's (or agent's) authority is similarly

7

composed of actual authority, expressed or implied, and the apparent authority which the principal has invested in him by his conduct. *Jefferson Parish Hosp. Serv. Dist. No. 2 v. K & W Diners, LLC*, 65 So. 3d 662, 668 (La. App. 2011) (citing *Boulos v. Morrison*, 503 So. 2d 1, 3 (La. 1987)).

"Apparent authority is created as to a third person by conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to the act done on his behalf by the person purporting to act for him. Apparent authority is distinguished from actual authority because it is the manifestation of the principal to the third person rather than to the agent that is controlling." *Cactus Pipe & Supply Co. v. M/V Montmartre*, 756 F.2d 1103, 1111 (5th Cir. 1985) (citing RESTATEMENT (SECOND) AGENCY § 27). Similarly, in order for apparent authority to apply under Louisiana law, "the principal must first act to manifest the alleged mandatary's authority to an innocent party. Then, the third party must reasonably rely on the mandatary's manifested authority." *Jefferson Parish Hosp. Serv. Dist. No.* 2, 65 So. 3d at 668.

If the agent had neither actual, nor implied, nor apparent authority, the principal may still be bound to contracts made by an agent with a third party if the principal ratifies the agent's unauthorized acts. *See* RESTATEMENT (THIRD) AGENCY § 4. "A ratification is not effective unless it encompasses the entirety of an act, contract, or other single transaction." *Id.* § 4.07. Louisiana law provides that ratification occurs when "the principal, knowing of the contract, does not repudiate it but accepts its benefits." *Bamber Contractors, Inc. v. Morrison Eng'g & Contracting Co.,* 385 So. 2d 327, 331 (La. App. 1980). The party asserting ratification must prove that the principal clearly intended to ratify the act. *Id.*

Mayer contends that summary judgment in its favor as lienholder is warranted because Sanderson was Calloway's agent, thereby binding Calloway to pay for the total unpaid amount of

8

$36,394.15 due for vessel repairs allegedly authorized by Sanderson.[35] Moreover, Mayer continues, even if Sanderson was not Calloway's agent, Calloway ratified his acts and so owes the aforementioned amounts.[36] Thus, Mayer argues that RSDC's complaint should be dismissed because the liens reflect the amounts due and owing.

RSDC and Calloway deny contractual privity on the grounds that Mayer admits it never believed it contracted with RSDC or Calloway, thereby undermining Mayer's apparent agency theory.[37] They also dispute the scope of Sanderson's actual authority to order repairs.[38] For instance, Calloway testified that he told Sanderson not to use Mayer for any repairs,[39] but also that he desired Sanderson to act as intermediary between him and Mayer for any repairs,[40] and paid Sanderson for the bridge reassembly.[41] Further, Sanderson testified that he never ordered any work besides the bridge repair and claims that Mayer fabricated the invoices while Sanderson was in poor health, knowing Sanderson would not contest them.[42] Because the nature and extent of the underlying repairs are disputed, RSDC and Calloway submit that Mayer is not entitled to summary judgment.[43]

Though there was no express contract between Sanderson and Calloway, the parties essentially agree that Calloway authorized Sanderson to order the *Tuna Taxi*'s bridge reassembly.[44] If Sanderson did indeed order further repairs, Mayer does not point to undisputed evidence establishing that Sanderson acted with actual or apparent authority to do so. Similarly, the question

---

[35] R. Doc. 83-3 at 10.
[36] R. Doc. 102 at 5-6.
[37] R. Docs. 88 at 2-4; 99 at 4 (citing R. Doc. 83-8 at 20).
[38] R. Doc. 88 at 2-3.
[39] R. Doc. 99 at 3 (citing R. Doc. 83-8 at 20).
[40] R. Doc. 88-4 at 13.
[41] *Id.*
[42] *Id.* at 13-15.
[43] R. Doc. 88 at 4-6.
[44] *See* R. Docs. 99 at 3; 83-3 at 3.

of ratification is also disputed and cannot be resolved on summary judgment. Finally, the parties dispute the nature and extent of repairs that gave rise to the liens that Mayer filed. Specifically, Sanderson contests ordering any repairs beyond that of the bridge.[45] Even if Sanderson were Calloway's agent, the agent disputes ordering all other repairs. Given these disputed material facts, the Court cannot grant summary judgment in favor of Mayer on its motion.

### C. RSDC and Calloway's Motion for Summary Judgment Seeking the Dismissal of Mayer's Counterclaim and Third-Party Demand

RSDC and Calloway seek summary judgment dismissing Mayer's counterclaim and third-party demand, urging that Louisiana's three-year prescriptive period on open-account claims bars all of Mayer's contract claims; that Mayer was not in contractual privity with either RSDC or Calloway, whether directly or through agency; and that Mayer's alternative theories do not support recovery because they are mere "gap fillers." The Court has already explained that factual disputes forestall summary judgment on the issues of contractual privity and agency, which conclusion applied with equal force to RSDC and Calloway's cross-motion for summary judgment directed to Mayer's counterclaim and third-party demand as it does to Mayer's motion for summary judgment in its favor on these same claims. The Court turns now to RSDC and Calloway's other arguments.

#### 1. Mayer's Contract Claims

RSDC and Calloway contend that Mayer's claims for an open account and breach of contract are prescribed. The state prescriptive period for suits on open account is three years from the date the payment is exigible. La. Civ. Code arts. 3494, 3495. The most recent invoice was dated July 13, 2013, and RSDC and Calloway contend that Mayer did not bring suit until August

---

[45] R. Doc. 88-4 at 13-15.

10

26, 2016, when Mayer filed its counterclaim.[46] Using these dates, the prescriptive period would have accrued on July 13, 2016. Therefore, any claims Mayer might have had for suit on open account are arguably prescribed under Louisiana law.

Sometime after filing its motion for summary judgment and opposition to RSDC and Calloway's cross-motion for summary judgment, Mayer must have come to this same conclusion and voluntarily dismissed its open-account claim, leaving only the breach-of-contract, *quantum meruit*, and detrimental-reliance claims.[47] While Mayer acknowledges this in its reply in support of its motion for summary judgment, it claims a ten-year prescriptive period applies to its claims for breach of a maritime contract, citing a case holding that a ten-year prescriptive period applied to a breach for workmanlike performance under general maritime law.[48] But RSDC and Calloway argue that Mayer cannot rely on the ten-year prescriptive period because it pursued claims more properly characterized as one brought for violation of Louisiana's open-account statute.[49]

Under Louisiana law, the voluntary dismissal of a prescribed cause of action in favor of another does not change the nature of the cause of action; instead, the prescriptive period is determined by the "character of an action disclosed in the pleadings." *Starns v. Emmons*, 538 So. 2d 275, 277 (La. 1989). Here, Mayer described the contract as one where RSDC "would be invoiced weekly for the previous work performed."[50] Accordingly, Mayer alleged it "performed the necessary work and subsequently charged [RSDC's] account with the total sum of … $36,394.15 … for the services performed."[51] Further, Mayer also indicated it issued a credit to

---

[46] R. Doc. 99 at 4 (citing R. Doc. 83-11).
[47] R. Docs. 92 & 100.
[48] R. Doc. 102 at 6-7 (citing *Kevin Gros Offshore, LLC v. Max Welders, Inc.*, 2009 WL 152134 (E.D. La. Jan. 22, 2009)).
[49] R. Doc. 99 at 4-5.
[50] R. Doc. 10 at 6.
[51] *Id.*

RSDC totaling $10,472.15 for certain of the invoices.[52] And Mayer alleges that the balance of every invoice is past due.

The Louisiana open-account statute defines an "open account" as one that:

> includes any account for which a part or all of the balance is past due, whether or not the account reflects one or more transactions and whether or not at the time of contracting the parties expected future transactions. "Open account" shall include debts incurred for professional services, including but not limited to legal and medical services.

La. R.S. 9:2781(D). In *Frey Plumbing Co. v. Foster*, 996 So. 2d 969 (La. 2008), the Louisiana supreme court expounded upon the statutory definition of an "open account." Finding that the language of the statute was clear and unambiguous on its face and that its application led to no absurd consequences, the court rejected case law that required an open account to reflect a series of transactions, wherein courts would consider factors including whether a line of credit existed. *Id.* at 972. Rather, an outstanding balance on a single transaction fell within the plain language of the statute. *Id.*

The court also interpreted the plain language to mean that "professional services are included within the ambit of an open account, but … not mandatory …. Any account which fits the definition of an open account, including but not limited to an account for professional services, fits within the ambit of the statute." *Id.* Thus, the court held the trial court erred in concluding that a past-due amount for plumbing services was not a claim for an open account. *Id.* In particular, Louisiana courts have considered actions to collect outstanding invoices for ship repair services to be open-account claims. *See, e.g.*, *W. Handlin Marine, Inc. v. Gulf States Marine, Inc.*, 624 So. 2d 907, 909, 912 (La. App. 1993) (affirming judgment in favor of plaintiff for suit on open account for ship repairs).

---

[52] R. Doc. 83-3 at 6 (citing R. Doc. 83-11).

Here, the allegations of Mayer's counterclaim and third-party demand describe an overdue account for ship repair services. Mayer alleges a series of transactions and that it issued a credit for certain invoices. While not required by the statute, a business relationship in which one party provides services on credit is illustrative of an open account. *See Monsanto Co. v. KT Farms P'ship through Aymond*, 245 So. 3d 191, 201 (La. App. 2017). Thus, the character of this action falls squarely within the contours of a suit under Louisiana's open-account statute. Louisiana courts have consistently held that a claimant may not assert a breach-of-contract claim in hopes of circumventing the prescriptive periods in Louisiana Civil Code article 3494, including the three-year prescriptive period for open-account claims. *See*, *e.g.*, *Dear v. Mabile*, 637 So. 2d 745, 747 (La. App. 1994) (rejecting contract theory of recovery when trial court found open account); *see also Tiger Indus., Inc. v. Blake*, 2013 WL 6072711, at *2-4 (E.D. La. Nov. 18, 2013) (dismissing case due to prescription of open-account claim despite presence of contract claim). The Louisiana supreme court explained: "All of the actions covered by the provisions of [Louisiana Civil Code] article [3494] essentially arise from contractual relationships. Article 3494 does not present a choice between a contract remedy and some other remedy; it merely provides exceptions to the general rule stated in article 3499 that a personal action prescribes in ten years." *Starns*, 538 So. 2d at 277. Thus, though an open account involves a contractual relationship, it is a specific kind of contract subject to the specific three-year prescriptive period in article 3494. *Dear*, 637 So. 2d at 747.

To save its contractual claims from Louisiana's three-year bar, Mayer argues that its breach-of-contract action remains viable because it arises out of a maritime contract and is thus subject to a ten-year prescriptive period, citing *Kevin Gros Offshore, LLC v. Max Welders, Inc.*, 2009 WL 152134 (E.D. La. Jan. 22, 2009), which held that a ten-year prescriptive period applied

13

to a claim for breach of workmanlike performance of a maritime contract. However, the case Mayer cites cannot carry the load of its argument, because here Mayer did not allege a breach of workmanlike performance under general maritime law, a distinct cause of action that may give rise to a ten-year prescriptive period. *Compare id.* at *3-4 (discussing prescriptive periods corresponding to theories of liability for improper ship repairs), *with W. Handlin Marine, Inc.*, 624 So. 2d at 912-13 (upholding open account action for ship repairs).

While the foregoing represents the limit of the parties' analysis of the issue, the Court is concerned it does not constitute a complete analysis of the applicable law. A contract for ship repairs is indeed a maritime contract, as Mayer now maintains. *See North Pacific S.S. Co. v. Hall Bros. Marine Ry. & Shipbldg.*, 249 U.S. 119, 129 (1919); *Texaco Expl. & Prod., Inc. v. AmClyde Engineered Products*, 448 F.3d 760, 771 (5th Cir. 2006). General maritime law then should govern the question of whether a claim is time-barred. *See generally Mike Evans Crane Services, LLC v. Cashman Equip. Corp.*, 2013 WL 5348426, at *1-3 (5th Cir. Sept. 23, 2013) (general maritime law, rather than Louisiana open-account statute, applied to case involving maritime contract). Courts refuse to subordinate federal admiralty principles to the dictates of state law. *Green v. Vermilion Corp.*, 144 F.3d 332, 339-40 (5th Cir. 1998) (exclusive remedy provision of Louisiana Workers' Compensation Act did not preclude employee from asserting claims for unseaworthiness and negligence under general maritime law) (citing, *inter alia*, *The Key City*, 81 U.S. (14 Wall.) 653, 660 (1871) (stating that doctrine of laches, not state statutes of limitations, apply to suits enforcing maritime liens)). Thus, it is inappropriate to look first to Louisiana law for the prescriptive periods applicable to open-account and breach-of-contract claims in connection with a maritime contract. *Jambon & Assocs., LLC v. Seamar Divers, Inc.*, 2009 WL 2175980 (E.D. La.

July 20, 2009) (general maritime law, not Louisiana open-account statute, governed right to attorney's fees on claim concerning a maritime contract).

In the absence of a specific statute, the time limit for bringing suit is controlled by the doctrine of laches in admiralty. 1 THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 5.18 (6th ed. 2018). The application of laches depends upon a showing of three elements: (1) delay on the part of the claimant in filing suit; (2) that is unexcused; and (3) that results in undue prejudice to the respondent's ability to present an adequate defense. *See West Wind Africa Line, Ltd. v. Corpus Christi Marine Servs. Co.*, 834 F.2d 1232, 1234-35 (5th Cir. 1988).

> The Fifth Circuit applies an analogy rule to determine which party bears the burden of proof with regard to unreasonable delay and prejudice. Under this rule, the Court must determine which statute of limitations period is most analogous to the claim at hand. Where the plaintiff files a claim within the analogous statute of limitations, the defendant bears the burden of proving unreasonable delay and prejudice to maintain a viable laches defense. If, however, the plaintiff files suit after the analogous statute has run, then the plaintiff must prove the absence of prejudice or provide an excuse for the delay to defeat a laches defense.

*Louisiana v. Rowan Cos.*, 728 F. Supp. 2d 896, 902 (S.D. Tex. 2010) (citing *Mecom v. Levingston Shipbuilding Co.*, 622 F.2d 1209, 1215 (5th Cir. 1980)); *see also Le Gate v. Panamolga*, 221 F.2d 689 (2d Cir. 1955) (state statute of limitations for same kind of action is often applied by analogy).

The most analogous statute of limitations applicable to Mayer's claims may well be the three-year bar under Louisiana's open-account statute. But this does not end the inquiry because, even if so, Mayer would have the opportunity to prove the absence of prejudice or provide an excuse for its delay in bringing its contract claims. The Court notes that the summary judgment evidence before it includes the two liens filed by Mayer in March and July of 2013 – dates well within the three-year prescriptive period for open-account claims in Louisiana. The liens name the person Mayer identified was the owner of record of the *Tuna Taxi* in 2013, and they attach the invoices that are the basis of Mayer's counterclaim and third-party demand in this suit. Mayer

could argue, then, that it acted with diligence – in fact, almost immediately after the last of the invoices – in filing the liens against the vessel and in identifying the owner then of record. That the vessel's record ownership was later (in August of 2014)[53] changed by RSDC and Calloway may well constitute a sufficient excuse for Mayer's delay in asserting its claims (in a manner other than by lien) until after discovery revealed to Mayer RSDC and Calloway's position regarding the vessel's current ownership. Regardless, that RSDC was aware of the open-account claims reflected in the liens as of the date it filed this action,[54] and that such date (April 2013) fell within the analogous three-year limitations period (which accrued on July 13, 2016), casts doubt on any assertion that RSDC and Calloway can have been prejudiced by any delay. Accordingly, this Court concludes on this summary judgment record that the doctrine of laches does not bar Mayer's claim for breach of a maritime contract.

### 2. *Quantum Meruit* Claim

Under Louisiana law, *quantum meruit* is an equitable remedy in which the court supplies a reasonable measure of compensation when none is stated in an implied or express contract. *United Disaster Response, LLC v. Omni Pinnacle, LLC*, 569 F. Supp. 2d 658, 665 (E.D. La. 2008) (citing *Morphy, Makofsky & Masson Inc. v. Canal Place 2000*, 538 So. 2d 569, 574-75 (La. 1989)); *see also Fogleman v. Cajun Bag & Supply Co.*, 638 So. 2d 706, 708 (La. App. 1994) (discussing use of phrase "*quantum meruit*" as a descriptive term for the equitable principles of contract interpretation enunciated in La. Civ. Code art. 2055)). The equitable remedy of *quantum meruit* is distinct from the substantive common law action of *quantum meruit*, which is analogous to the civilian *actio de in rem verso*, or action for unjust enrichment in Louisiana Civil Code article 2298. *See United Disaster Response, LLC*, 569 F. Supp. 2d at 665.

---

[53] *See supra* note 6 & accompanying text.
[54] After all, RSDC attached the liens as exhibits to its complaint. R. Docs. 1-1 & 1-2.

Article 2298 states: "A person who has been enriched without cause at the expense of another person is bound to compensate that person." The Louisiana supreme court has held that, among the requirements for establishing a cause of action for unjust enrichment, there must be enrichment and impoverishment, and there must be no other remedy at law available to the plaintiff. *Baker v. Maclay Props. Co.*, 648 So. 2d 888, 897 (La. 1995) (citations omitted). Article 2298 expressly states that the remedy of unjust enrichment "is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule." La. Civ. Code art. 2298. A plaintiff is precluded from seeking recovery under a theory of unjust enrichment if he pleads another cause of action, regardless of whether the plaintiff is successful on the other theory of recovery. *Walters v. MedSouth Record Mgmt., LLC*, 38 So. 3d 243, 244 (La. 2010) (unjust enrichment unavailable where tort claims prescribed). Thus, if the plaintiff has asserted another theory of recovery, the plaintiff "has failed to state a cause of action in unjust enrichment." *Id.*

RSDC and Calloway argue that Mayer's claim for either *quantum meruit* or unjust enrichment cannot stand. Because Mayer is suing on invoices, which it believes are based on an express contract with the price established by the invoices, the Louisiana equitable remedy of *quantum meruit* is unavailable. Furthermore, Mayer cannot assert an unjust enrichment claim when it has pursued another remedy, even if such a claim were said to be prescribed.[55] The Court agrees. As a consequence, the Court need not decide whether Mayer's allegations are properly categorized as a claim for *quantum meruit* or unjust enrichment because Mayer cannot succeed on either as a matter of law.

---

[55] R. Doc. 88 at 1-2.

### 3. Detrimental Reliance Claim

While Mayer moves for summary judgment on the entirety of its counterclaims and third-party demand, it fails to address its claim for detrimental reliance. RSDC and Calloway state that none of Mayer's equitable claims, apparently but not expressly including the detrimental-reliance claim, may stand in light of the prescribed suit on open account.[56] But, unlike Louisiana Civil Code article 2298, Louisiana Civil Code article 1967 contains no limiting language that designates it a subsidiary action – a "gap filler" in the words of RSDC and Calloway. Indeed, the court in *Water Craft Mgmt., LLC v. Mercury Marine*, 361 F. Supp. 2d 518, 557-58 (E.D. La. 2004), held that detrimental reliance is not barred by a contract except when the contract's integrating clause renders the parties' reliance unreasonable. Thus, contrary to RSDC and Calloway's argument, the mere existence of a contract, upon which an open-account claim is predicated, does not preclude Mayer's recovery for detrimental reliance.

To recover under the theory of detrimental reliance, the movant must show "(1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance" by a preponderance of the evidence. *Suire v. Lafayette City-Par. Consolidated Gov't*, 907 So. 2d 37, 59 (La. 2005). Because the parties did not present evidence regarding this claim, neither side is entitled to summary judgment on it.

## IV. CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS ORDERED** that M.G. Mayer Yacht Services, Inc.'s Motion for Summary Judgment (R. Doc. 83) is DENIED; and

---

[56] R. Doc. 99 at 5-6.

**IT IS FURTHER ORDERED** that RSDC Holdings LLC and Donald Joe Calloway's Motion for Summary Judgment (R. Doc. 78) is GRANTED as to M.G. Mayer Yacht Services, Inc.'s claim for *quantum meruit* and DENIED as to M.G. Mayer Yacht Services, Inc.'s claims for breach of contract and detrimental reliance.

New Orleans, Louisiana, this 26th day of November, 2018.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE