UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RSDC HOLDINGS, LLC | CIVIL ACTION |
| VERSUS | NO. 16-3573 |
| M.G. MAYER YACHT SERVICES, INC., *et al.* | SECTION M (5) |

### ORDER & REASONS

Pursuant to the judgment entered in this matter on February 1, 2019,[1] defendant M.G. Mayer Yacht Services, Inc. ("Mayer Yacht") filed a memorandum in support of its award of attorney's fees, costs, and interest,[2] to which third-party defendant Donald Calloway filed an opposition,[3] and in further support of which Mayer Yacht replies.[4] Having considered the parties' memoranda and evidentiary submissions, and the applicable law, the Court issues this Order & Reasons.

### I. BACKGROUND

This dispute over unpaid vessel repairs was tried before the Court, sitting without a jury, over one day on December 10, 2018.[5] In pertinent part, the Court entered judgment in favor of Mayer Yacht and against Calloway for unpaid invoices "in the amount of $29,394.15, together with a finance charge of 18% per annum calculated on the amount due on each invoice, reasonable attorney's fees, and reasonable costs and expenses of collection, all in accordance with the contract."[6] The contract referenced in the judgment is a work order executed on Calloway's behalf by his agent (Richard Sanderson) to engage Mayer Yacht to perform vessel

---
[1] R. Doc. 136.
[2] R. Doc. 137.
[3] R. Doc. 138.
[4] R. Doc. 142.
[5] R. Doc. 131.
[6] R. Doc. 136.

repairs to the *Tuna Taxi*, the full extent of which is reflected in a series of invoices Mayer Yacht issued to Calloway's agent as the vessel owner's representative.[7] The contract provides, in part, that "invoices unpaid thirty (30) days from presentation thereof, shall be subject to a finance charge of 18% annum" and that "any costs incurred in collecting this account, including attorneys' fees shall be charged against the vessel and/or owner, and the owners and/or vessel agree to pay such costs of collection, including attorneys fees."[8] The Court concluded "that Calloway is liable to Mayer Yacht for the full unpaid balance on the invoices of $29,394.15, plus interest at the contract rate of 18% per annum payable from the date each invoice was due, reasonable attorney's fees, and all other reasonable costs and expenses of collection,"[9] and ordered Mayer Yacht to submit competent evidence supporting its claim for attorney's fees, costs, and expenses, and to quantify its claim for prejudgment interest under the contract.[10]

## II. THE PARTIES' POSITIONS

On February 11, 2019, as directed, Mayer Yacht submitted evidence in support of its claim for attorney's fees, costs, and expenses in the amount of $68,794.13, contending that this amount is reasonable under the lodestar approach.[11] Mayer Yacht's evidence consists of the invoice of its counsel, Koch & Schmidt, LLC (the "Koch law firm"), and the affidavit of lead trial counsel, R. Joshua Koch, verifying the accuracy of the Koch law firm's invoice.[12] In an effort to avoid unnecessary dispute as to the amount of prejudgment interest, Mayer Yacht agreed "to hav[e] interest begin to run only from August 5, 2013," the date of the second of the two liens filed by Mayer Yacht against the *Tuna Taxi* for the unpaid vessel repairs.[13] Mayer Yacht calculates "[t]he amount of interest owed through the date of judgment [*i.e.*, February 1,

---

[7] R. Doc. 135 at 9 & 12-14. The agreement between Mayer Yacht and Calloway constitutes a maritime contract. *Id*. at 19; R. Doc. 114 at 14.
[8] R. Doc. 135 at 19-20 (quoting Exh. 7).
[9] *Id.* at 20.
[10] R. Doc. 136.
[11] R. Doc. 137 at 1-2.
[12] R. Docs. 137-1 and 137-2.
[13] R. Doc. 137 at 4.

2019]" as $29,021.25.[14] Calloway filed an opposition to Mayer Yacht's request for fees, costs, and interest, contending that Mayer Yacht's claim for attorney's fees, costs, and expenses should be reduced by $58,086.76 and its claim for prejudgment interest reduced to zero.[15]

## III. LAW & ANALYSIS

### A. Standard for Attorney's Fees, Costs, and Expenses

"Maritime disputes generally are governed by the 'American Rule,' pursuant to which each party bears its own [attorney's fees and] costs," unless there is a controlling statute or contractual provision that allows for such recovery. *Tex. A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 405 (5th Cir. 2003). The Court previously found that the maritime contract between Mayer Yacht and Calloway contains a fee-shifting provision entitling Mayer Yacht to an award of fees, costs and expenses. Thus, in this case, the maritime contract language controls. Courts within the Fifth Circuit look to the lodestar analysis as the appropriate basis for reviewing a fee request in a case involving a maritime contract. *See Int'l Marine, LLC v. FDT, LLC*, 2015 WL 914898, at *3 (E.D. La. Mar. 3, 2015); *A C Marine, Inc. v. Axxis Drilling, Inc.*, 2011 WL 1595438, at *2 (W.D. La. Apr. 25, 2011); *Chevron USA, Inc. v. Aker Maritime, Inc.*, 2011 WL 999253, at *3-4 (E.D. La. Mar. 17, 2011), *aff'd*, 689 F.3d 497 (5th Cir. 2012); *Malin Int'l Ship Repair & Drydock, Inc. v. M/V SEIM SWORDFISH*, 611 F. Supp. 2d 627, 634 (E.D. La. 2009), *aff'd*, 369 F. App'x 553 (5th Cir. 2010); *see also Natco Ltd. P'ship v. Moran Towing of Fla., Inc.*, 267 F.3d 1190, 1196 (11th Cir. 2001).

In calculating the appropriate fee, "the 'lodestar' calculation is the most useful starting point." *Who Dat Yat Chat, LLC v. Who Dat, Inc.*, 838 F. Supp. 2d 516, 518 (E.D. La. 2012) (trademark case) (quotation omitted). That is, a court must determine the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *La. Power & Light*

---

[14] *Id.*
[15] R. Doc. 138.

3

*Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). The lodestar determination is presumed reasonable, but may be adjusted upward or downward depending on the weight a court allots to the various factors identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).[16] Mayer Yacht, as the party requesting fees, bears the burden of establishing the reasonableness of the fees, costs, and expenses it requests by submitting adequate documentation – namely time records, affidavits, and the like. *Who Dat Yat Chat,* 838 F. Supp. 2d at 518. Mayer Yacht requests $29,394.15 in attorney's fees, costs, and expenses. This amount is derived from the fees, costs, and expenses Mayer Yacht had already incurred at the time it filed its post-trial memorandum and includes no additional fees that Mayer Yacht could have reasonably anticipated it would incur in replying to Calloway's expected opposition. Mayer Yacht in fact subsequently filed a reply memorandum in support of its request for attorney's fees, costs, and expenses.[17]

### B. Lodestar Analysis

The lodestar amount in this case requires a determination of the hours reasonably expended as well as an appropriate hourly rate in the New Orleans area, where the Koch law firm attorneys work. Mayer Yacht has provided detailed billing records for the hours expended by the Koch law firm attorneys in this litigation. The Court finds that the hours billed by the Koch law firm attorneys in the prosecution of this matter are reasonable as evidenced by the billing records

---

[16] The *Johnson* factors are: (1) time and labor required; (2) novelty and difficulty of issues; (3) skill required; (4) loss of other employment in taking the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or circumstances; (8) amount involved and results obtained; (9) counsel's experience, reputation, and ability; (10) case undesirability; (11) nature and length of relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19. However, the Supreme Court and Fifth Circuit have stated that several of the *Johnson* factors – namely, the complexity of the issues, the results obtained, the special skill and experience of counsel, and the preclusion of other employment – are fully reflected and subsumed in the lodestar amount. *See Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986); *Shipes v. Trinity Indus.*, 987 F.2d 311, 322 (5th Cir. 1993). Of these factors, "the Fifth Circuit has singled out four of the factors as most important: (1) the time and labor involved; (2) the customary fee; (3) the amount involved and the results obtained; and (4) the experience, reputation, and ability of counsel." *Dinet v. Hydril Co.,* 2006 WL 3904991, at *6 (E.D. La. 2006) (citing *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998)).

[17] R. Doc. 142.

attached to its post-trial memorandum. Additionally, the Court finds that the hourly rates charged by the Koch law firm lawyers are reasonable as a matter of geographical comparison for the work performed. Therefore, the Court finds that the $29,394.15 amount requested by Mayer Yacht constitutes the reasonable lodestar amount for fees, costs, and expenses it incurred in this matter. And, finally, the Court finds no reason under the applicable *Johnson* factors to adjust the lodestar amounts.

In particular, according to the affidavits and billing records submitted, Koch, an attorney with over 40 years of experience in the area of maritime law, charged a rate of $300 per hour, which is equal to or less than what he typically charges for other maritime clients in similar cases; Jennifer E. Barriere, an attorney with over 6 years of experience, billed Mayer Yacht at $225 per hour, which is equal to or less than what she typically charges for similar clients; and Katherine W. Lynch and Caitlin Morgenstern, attorneys with at least 3 years of experience, were billed at $200 and $185 per hour, respectively. The Court is convinced that comparison of these rates with those allowed by other courts in this district are sufficient evidence to establish their reasonableness. *See Who Dat Yat Chat*, 838 F. Supp. 2d at 520 (finding that $325 per hour for an attorney with 28 years' experience, $250 for an attorney with 16 years' experience, $200 per hour for attorneys with 9-10 years' experience, and $175 per hour for attorneys with 3-4 years' experience were reasonable); *Oreck Direct, LLC v. Dyson, Inc.*, 2009 WL 961276, at *6 (E.D. La. Apr. 7, 2009) ("The Court is familiar with the local legal market and notes that the top rate for partner-level attorneys here is between $400 and $450 per hour."); *Bd. of Supervisors of La. State Univ. v. Smack Apparel Co.*, 2009 WL 927996, at *4 & *7 (E.D. La. Apr. 2, 2009) (finding that $325 was a reasonable hourly rate for an attorney with 10 years' experience in a specialty practice and for an attorney with 29 years of unspecialized legal experience). In addition, the Court finds that the approximately 280 hours of legal services performed were reasonable in light of the issues raised in the case. Moreover, a review of the time entries in the Koch law firm

invoice submitted by Mayer Yacht reveal the proper exercise of billing judgment. Finally, the $3,720.24 in costs and expenses incurred by Mayer Yacht were reasonable both in terms of their amount and nature. Accordingly, the Court finds that the amount of $29,394.15 in fees, costs, and expenses is appropriate, given consideration of the *Johnson* factors.

Calloway opposes Mayer Yacht's request for attorney's fees, costs, and expenses on six grounds.[18] The Court will deal with each in turn. First, Calloway argues that "[a]ll legal work and expenses before July 7, 2017 should be disallowed" because "Calloway was not named as a defendant until September 7, 2017."[19] Notably, to understand the breadth of Calloway's net, the fees Calloway would have the Court disallow include those incurred by Mayer Yacht for taking Calloway's own deposition. It is true that the case was originally filed by RSDC Holdings, LLC ("RSDC") to obtain the release of the liens Mayer Yacht filed against its vessel, the *Tuna Taxi*. Mayer Yacht counterclaimed seeking to recover amounts owed for vessel repairs. Only later did Mayer Yacht discover that Calloway was the vessel's owner at the time the repairs were done, whereupon Mayer Yacht added Calloway as a third-party defendant. But any work Mayer Yacht did in this case before Calloway was added as a party was necessary to its establishing Calloway's obligation under Mayer Yacht's invoices. That some of these fees, costs, and expenses might have been avoided had Calloway revealed his ownership role earlier is not fault attributable to Mayer Yacht, and Mayer Yacht should not be penalized for litigating the case as it unfolded.

Second, Calloway argues that "[o]nly Mr. Koch's fees should be considered because the other professionals did not submit affidavits."[20] It is enough that Koch's affidavit, together with Mayer Yacht's other submissions, provide the essential information concerning the hourly rates, title, role, qualifications, and special skills of the attorneys who provided legal services. This

---

[18] R. Doc. 138.
[19] *Id.* at 1-2.
[20] *Id.* at 2.

information was first set out in Koch's affidavit, Mayer Yacht's memorandum and reply memorandum in support of its fee request, and in the law firm invoices submitted in support of the request. Nevertheless, with its reply memorandum, Mayer Yacht submitted additional affidavits of Lynch and Barriere; it was unable to submit the affidavit of Morgenstern because she is currently clerking for the Louisiana Supreme Court and no longer at the Koch law firm. Courts frequently award fees for other firm professionals on the basis of an affidavit submitted by a single firm representative. This Court declines to impose any greater requirement here.

Third, Calloway argues that Mayer Yacht's claimed attorney's fees should be reduced for block billing and vagueness.[21] The Court disagrees. The Court is satisfied that the time entries in the Koch law firm's invoice reflect a sufficient level of detail and description to advise of the services rendered. While the firm did employ block billing to a limited degree, those fee entries do not raise concerns about the reasonableness of either the nature or duration of the services rendered, but instead reflect an appropriate billing judgment.

Fourth, Calloway contends that "[m]uch of the legal work was unreasonable."[22] The Court has reviewed each instance of work labeled by Calloway as unreasonable, but finds Mayer Yacht's efforts to have had a reasonable litigation purpose in each case even if the ultimate objective – whether a default judgment or a third-party deposition – was not achieved. Each instance of work was helpful to Mayer Yacht's achieving the final result.

Fifth, Calloway argues that all of Mayer Yacht's legal fees should not be attributed to him because RSDC was also a defendant in counterclaim for the unpaid vessel repairs.[23] However, the totality of the legal services performed for Mayer Yacht would have been the same even had Calloway earlier disclosed his role as vessel owner and been the only party defending Mayer Yacht's claims.

---

[21] *Id.* at 3-4.
[22] *Id*. at 4-5.
[23] *Id*. at 5-6.

Finally, Calloway urges that no fees should be awarded because Mayer Yacht did not submit its attorney-client contract or evidence that it paid its attorneys for the amounts now claimed. Calloway cites no authority for his position, and the Court has found none. The circumstances presented by this case do not require such evidence as a prerequisite to an award of fees, costs, and expenses.

In sum, all of the grounds Calloway asserts for reducing Mayer Yacht's claimed fees, costs, and expenses are without merit.

### C. Interest

Calloway also contends that Mayer Yacht's interest claim should be denied in its entirety because Mayer Yacht did not submit an affidavit from a financial professional or "show how the interest amounts were calculated."[24] Mayer Yacht responds:

> A review of M.G. Mayer's Memorandum in Support of its Award of Attorney Fees, Costs and Interest, however, demonstrates that M.G. Mayer spent half of a page specifically outlining how it calculated the amount of interest owed. In fact, in an effort to be reasonable and avoid any issue as to the effect of earlier payments made by Calloway on the outstanding invoices, M.G. Mayer agreed that interest would only be calculated from August 5, 2013 until the date of judgment, or February 1, 2019. The next few lines of the memorandum outline in detail the exact time period covered, down to the day, the interest rate used, and finally, the total amount requested based on this calculation.[25]

Calloway does not dispute that the applicable contract rate is 18% per annum. Nor does he contest the starting date Mayer Yacht used for its calculation of interest (August 5, 2013), especially since this date works to Calloway's advantage. And Calloway does not contest either the simple mathematical derivation of the total amount of interest claimed ($29,021.25) or Mayer Yacht's straightforward explanation and breakdown of how this amount was calculated. Accordingly, Calloway's challenge to the interest Mayer Yacht claims is likewise without merit.

---

[24] *Id.* at 7.
[25] R. Doc. 142 at 2 (footnote omitted).

## IV. CONCLUSION

Accordingly, for the forgoing reasons,

IT IS ORDERED that Mayer Yacht is awarded attorney's fees, costs and expenses in the total amount of $68,794.13; and

IT IS FURTHER ORDERED that Mayer Yacht is awarded interest in the total amount of $29,021.25. Together with the amount of the principal previously awarded by judgment ($29,394.15), the amount hereby awarded for attorney's fees, costs, and expenses ($68,794.13) and interest ($29,021.25), combine for a total amount owed by Calloway to Mayer Yacht from the date of judgment (February 1, 2019) of $127,209.53, plus post-judgment interest.

New Orleans, Louisiana, this 14th day of May, 2019.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE